UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MAGNA DONNELLY CORPORATION,

        Plaintiff,                                  Civil Action No. 07-cv-10688

    v.                                       District Judge Victoria A. Roberts
                                               Magistrate Judge Laurie J. Michelson

3M COMPANY,

        Defendant.
_____/

**REPORT AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART DEFENDANT'S EMERGENCY MOTION FOR CONTEMPT AND SANCTIONS [61]**

Plaintiff Magna Mirrors of America, Inc. ("Magna") brought this suit against Defendant 3M Company ("3M") asserting that 3M has directly and indirectly infringed its patent entitled "Interior Rear View Mounting System Utilizing One-Package Structural Adhesive," U.S. Patent No. 5,587,236 ("'236 Patent"). A Scheduling Order (Dkts. 25, 26) provides for patent-specific procedures in this case including party obligations for claim-construction. Before the Court for disposition is 3M's Emergency Motion for Contempt and Sanctions ("Motion for Contempt"); 3M asserts that Magna has not complied with portions of the Scheduling Order governing the parties' exchange of their proposed interpretations of disputed claim terms. (Dkt. 61.) 3M's Motion was briefed and heard on an expedited schedule. (*See* Dkts. 63, 65.)

For the following reasons, this Court RECOMMENDS that 3M's Motion for Contempt (Dkt. 61) be GRANTED IN PART and DENIED IN PART.[1]

---

[1] As set forth below, the Court believes that 3M's Motion is governed by Fed. R. Civ. P. 16(f). Nonetheless, because 3M seeks the remedy of contempt, this Court proceeds by Report and Recommendation rather than by Opinion and Order. *Cf. U.S. v. Hendrickson*, No. 06-11753, 2010 WL 2318770, at *1 (Apr. 16, 2010) *report adopted by* 2010 WL 2219342 (E.D. Mich. May 28,

**I. BACKGROUND**

1.  On September 9, 2011, Magna and 3M filed a joint Proposed Scheduling Order. (Dkt. 25.)

2.  On September 23, 2011, District Judge Victoria A. Roberts entered an Order adopting the terms of the Proposed Scheduling Order and setting dates in response to the parties' proposed dates in the Proposed Scheduling Order. (Dkt. 26.)

3.  Together, the Proposed Scheduling Order (Dkt. 25) and the September 23, 2011 Order (Dkt. 26) comprise, and will be referred to as, the "Scheduling Order."

4.  Section VII.C of the Scheduling Order provides procedures for "Claim Construction Proceedings." (Dkt. 25 § VII.C.)

5.  Paragraph VII.C.1 of the Scheduling Order provides: "INITIAL IDENTIFICATION OF DISPUTED CLAIM TERMS: The parties will confer to determine what claim terms may need to be interpreted by the Court by [December 7, 2011]." (Dkt. 25 at ¶ VII.C.1; Dkt. 26 ¶ 6.)

6.  On December 7, 2011, 3M sent Magna an email with a list of 21 "claim terms that may need to be construed." The email further stated, "[w]e . . . re-iterate our view that merely stating that terms have a 'plain and ordinary meaning' is insufficient in this process." (Dkt. 61, 3M's Mot. for Contempt, Ex. 1 at ECF Pg ID 2901.)

7.  Paragraph VII.C.2 of the Scheduling Order provides that, on December 21, 2011, 3M and

---

2010) ("Except in cases where a United States Magistrate Judge exercises consent jurisdiction in a civil case under 28 U.S.C. § 636(c) or misdemeanor jurisdiction under 18 U.S.C. § 3401, the Magistrate Judge may not enter an order of civil contempt. Rather, the Magistrate Judge must proceed under 28 U.S.C. § 636(e)(6)(B)."); *N.L.R.B. v. Steele*, No. 07-CV-50712, 2008 WL 474077, at *1 (E.D. Mich. Feb. 19, 2008) ("The proper contempt procedure requires that the Magistrate Judge certify findings of fact to support a finding of contempt . . . ."). Further, the Court certifies the facts to the District Judge as contemplated by 28 U.S.C. § 636(e)(6)(B).

        Magna would exchange a chart containing the party's proposed interpretation of the disputed claim terms along with citations to evidence supporting the proposed interpretation:

> PROPOSED INTERPRETATIONS: On or before [December 21, 2011], the parties shall exchange, but not file, a chart or table (Exhibit A) that lists for each disputed claim term the party's proposed interpretation of the disputed claim term along with citations to the intrinsic and extrinsic evidence that supports its interpretation along with a summary of any testimony that is expected to be offered to support that interpretation.

(Dkt. 25 at ¶ VII.C.2; Dkt. 26 at ¶ 7.)

8. On December 20, 2011, 3M sent Magna an email with a list of 13 terms that they intended to construe and stated, "We look forward to receiving your proposed constructions, 'plain and ordinary' or otherwise. We have not received any terms from you that you believe need to be construed. If you have any, please let us know ASAP." (3M's Mot. for Contempt, Ex. 1 at ECF Pg ID 2899-2900.)

9. On December 21, 2011, Magna provided 3M with its initial "Proposed Construction of Disputed Claim Terms" ("Magna's Proposed Interpretations"). It stated in part:

> Magna Donnelly contends that none of the 21[2] designated terms requires interpretation, because the designated terms are not ambiguous or confusing as presented in the claims. Magna Donnelly further contends that the terms are entitled to the full scope of their plain and ordinary meaning.

(3M's Mot. for Contempt, Ex. 4 at ECF Pg ID 2964, Magna's Proposed Interpretations at 2.)

10. Magna's Proposed Interpretations included a chart providing that each disputed claim

---

[2] Before narrowing its list to 13 terms, 3M had previously asserted that 21 terms required construction.

3

limitation should be given its "Plain and Ordinary" meaning. (Magna's Proposed Interpretations at 3-14.)

11. Magna's Proposed Interpretations did not cite intrinsic or extrinsic evidence. (Magna's Proposed Interpretations at 3-14.)

12. Magna's Proposed Interpretations further stated,

> It is anticipated that further investigation, research, analysis, and arguments by [3M] will supply information, evidence, documents and/or facts and add meaning to known facts, as well as establish entirely new factual conclusions and legal contentions, all of which may lead to substantial additions to, changes in, and variations from the proposed construction of the disputed claim terms set forth herein. Magna Donnelly reserves the right to continue its investigation for facts, witnesses, and supporting data that may reveal information which, if it had presently been within Magna Donnelly's possession and knowledge, would have been included in this proposed construction of disputed claim terms to the extent that said information is not objectionable and/or available. Magna Donnelly reserves the right to change or supplement this proposed construction of disputed claim terms.

(Magna's Proposed Interpretations at 1-2.)

13. On December 21, 2011, upon receiving Magna's Proposed Interpretations, 3M sent an email to Magna stating: "We have received your 'claim constructions,' which we continue to view as deficient in failing to set forth any construction." (3M's Mot. for Contempt, Ex. 1 at ECF Pg ID 2899.)

14. Later that day, 3M provided its Proposed Interpretations of Claim Terms ("3M's Proposed Interpretations") to Magna. 3M gave constructions for 13 claim terms and included citations to intrinsic and extrinsic evidence. (3M's Mot. for Contempt at 3, Ex. 2, 3M's Proposed Interpretations.)

15. 3M's Proposed Interpretations also provided:

4

> These Proposed Interpretations are based on the Parties' Initial Identification of Disputed Claim Terms as specified in the Court's Scheduling Order. 3M reserves the right to amend or supplement these Proposed Interpretations based on Plaintiff's Proposed Interpretations of disputed claim terms, disclosures, responses to discovery, or based on further review and/or discovery. 3M also reserves the right to withdraw any of the identified claim terms prior to the Final Identification of Disputed Claim Terms under the Court's Scheduling Order or based on further review and/or discovery.

(3M's Proposed Interpretations at 2.)

16. Paragraph VII.C.3 of the Scheduling Order, entitled "Final Identification of Disputed Claim Terms," provides that on January 10, 2012,

> the parties shall confer again about the claim terms in dispute. At this meeting, the parties shall attempt to narrow and finalize the claim terms that need to be interpreted by the Court. If, at any time, the parties determine that a claim construction hearing is not necessary, they shall notify the Court in a timely matter. The parties shall set forth separately the construction of those claim terms on which the parties agree.

(Dkt. 25 at ¶ VII.C.3; Dkt. 26 at ¶ 9.)

17. Under the Scheduling Order, Magna was required to submit its opening claim-construction brief on February 9, 2012. (Dkt. 25 at ¶ VII.C.5; Dkt. 26 ¶ 11.)

18. That day, February 9, 2012, Magna served 3M with its Amended Proposed Construction of Disputed Claim Terms ("Magna's Amended Proposed Interpretations"). (3M's Mot. for Contempt, Ex. 5 at Pg ID 3001, Magna's Am. Proposed Interpretations at 22.)

19. In its Amended Proposed Interpretations, Magna explained,

> Magna contends that none of the now 13 designated terms require interpretation, because the designated terms are not ambiguous or confusing as presented in the claims. Magna further contends that the terms are entitled to the full scope of their plain and ordinary meaning. However, to advance the claim construction process, Magna provides the plain and ordinary meaning of the identified

5

claim terms, as understood by a person of ordinary skill in the art at the time the claimed invention was made.

(Magna's Am. Proposed Interpretations at 3.)

20. Magna's Amended Proposed Interpretations included an updated chart providing an alleged "plain and ordinary" definition in the event that the Court decides to construe a particular term and cites to evidence supporting its definition. (*See e.g.*, Magna's Am. Proposed Interpretations at 3.)

21. As an example, for the claim term "windshield," Magna's Amended Proposed Interpretations provide:

| Claim Language | Magna's Construction | Magna's Support |
|---|---|---|
| a **windshield**, said windshield including an interior surface; | "windshield": Plain and Ordinary. If the Court construes this term, Magna proposes that the plain and ordinary meaning is:<br><br>Principal glass provided for forward vision in operating a motor vehicle | '236 patent & prosecution history<br><br>Dictionary definitions<br><br>3M Shift Articles, 1996, 1997 |

(Magna's Am. Proposed Interpretations at 3.)

22. As another example, for the claim term "said adhesive is a modified epoxy," Magna's Amended Proposed Interpretations provide:

| Claim Language | Magna's Construction | Magna's Support |
|---|---|---|
| 2. The arrangement as set forth in claim 1 **wherein said adhesive is a modified epoxy** | "wherein said adhesive is a modified epoxy": Plain and Ordinary. If the Court construes this term, Magna proposes that the plain and ordinary meaning is: | '236 patent & prosecution history<br><br>'236 patent, col. 3, l. 30-31, col. 3, l. 40-46; col. 3, l. 61-67 |

6

|  | wherein said adhesive is produced by modification of an epoxy. |  |
|---|---|---|

(Magna's Am. Proposed Interpretations at 4.)

23. Also on February 9, 2012, Magna filed its opening claim-construction brief. (Dkt. 54.) The brief provides, "Magna maintains that none of the claim terms in this section require construction. Nonetheless, to advance this process, Magna provides the plain and ordinary meaning of the identified claim terms, as understood by a person of ordinary skill in the art at the time the claimed invention was made." (Dkt. 54, Magna's Mem. in Supp. of its Proposed Claim Construction at 6.)

24. On February 14, 2012, 3M filed the pending Motion for Contempt. (Dkt. 61., Def.'s Mot. for Contempt.)

25. In accordance with this Court's expedited briefing schedule, on February 21, 2012, Magna filed its Response to 3M's Motion for Contempt. (Dkt. 65, Pl.'s Resp. to Def.'s Mot. for Contempt.)

26. On February 24, 2012 this Court heard oral argument on 3M's Motion for Contempt.

## II. ANALYSIS

### A. Legal Standards

The opening sentence of 3M's Motion for Contempt provides: "Defendant 3M Company ('3M') respectfully moves for entry of an expedited Order for contempt by Plaintiff Magna Donnelly ('Donnelly') for violating the Court's Scheduling Order (Dkts. 25 & 26) and for appropriate sanctions." (Def.'s Mot. for Contempt at 1.) The Court construes this request as one pursuant to Fed. R. Civ. P. 16(f). That Rule states, "On motion or on its own, the court may issue any just

7

orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii), if a party or its attorney: fails to obey a scheduling or other pretrial order." Fed. R. Civ. P. 16(f)(1)(C). In turn, Rule 37(b)(2)(A) provides a non-exhaustive list of sanctions a court may impose, including "treating as contempt of court the failure to obey any order." Fed. R. Civ. P. 37(b)(2)(A)(vii); *see also In re Arizona*, 528 F.3d 652, 657 (9th Cir. 2008) ("Failure to comply with the scheduling order exposes a party to 'any just orders,' as determined by the district judge, including dismissal, entry of default or contempt of court." (citing Fed. R. Civ. P. 16(f), 37(b)(2))).

Under Rule 16, district courts have "broad discretion to enforce their scheduling orders" and have "wide latitude to impose sanctions for failure to comply with their scheduling orders." *Estes v. King's Daughters Med. Ctr.*, 59 F. App'x 749, 752-53 (6th Cir. 2003) (citing *Clarksville-Montgomery Cnty. Sch. Sys. v. U.S. Gypsum Co.*, 925 F.2d 993, 998 (6th Cir. 1991)). "The district court has discretion to impose whatever sanction it feels is appropriate, under the circumstances." *Id.* (citing Rule 16(f) advisory committee's note to 1983 amendments).

"[T]he power 'to punish for contempts' should not be used lightly." *Electrical Workers Pension Trust Fund of Local Union 58 v. Gary's Elec. Serv. Co.*, 340 F.3d 373, 378 (6th Cir. 2003); *see also Bishop v. Long Term Disability Income Plan of Sap America, Inc.*, No. 04-CV-0031, 2008 WL 170498, at *5 (N.D. Okla. Jan. 16, 2008) ("Civil contempt is a severe remedy that should be used only when absolutely necessary . . . ." (citing *NLRB v. Shurtenda Steaks, Inc.*, 424 F.2d 192 (10th Cir. 1970))). A party seeking to establish contempt must produce "clear and convincing evidence" showing that the alleged contemnor violated a "'definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order.'" *Gary's Elec. Serv. Co.*, 340 F.3d at 378 (quoting *NLRB v. Cincinnati Bronze, Inc.*,

829 F.2d 585, 588 (6th Cir. 1987)). The court's prior order must have been "clear and unambiguous," and "[a]mbiguities must be resolved in favor of the party charged with contempt." *Liberte Capital Group, LLC v. Capwill*, 462 F.3d 543, 550-51 (6th Cir. 2006) (citing *Grace v. Ctr. for Auto Safety*, 72 F.3d 1236, 1241 (6th Cir. 1996)).

Once the movant establishes a prima facie case of contempt, "the burden shifts to the contemnor who may defend by coming forward with evidence showing that he is presently unable to comply with the court's order." *Gary's Elec. Serv. Co.*, 340 F.3d at 378 (citing *United States v. Rylander*, 460 U.S. 752, 757 (1983)). When evaluating an alleged contemnor's failure to comply with a court order, the Court "also consider[s] whether the [accused] 'took all reasonable steps within [his] power to comply with the court's order.'" *Id.* (citing *Peppers v. Barry*, 873 F.2d 967, 968, 969 (6th Cir. 1989)).

### B. Magna's Reliance on "Plain and Ordinary" Meaning Did Not Clearly Violate the Scheduling Order

Magna's December 21, 2011 Proposed Interpretations provided that none of the 13 claim terms identified by 3M needed to be construed and included a chart providing that each such term should be accorded its "plain and ordinary" meaning. Magna's chart cited no evidence. Therefore, it is 3M's position that Magna did not, as the Scheduling Order requires, provide a chart "that lists for each disputed claim term the party's proposed interpretation of the disputed claim term along with citations to the intrinsic and extrinsic evidence that supports its interpretation." (Dkt. 25 at ¶ VII.C.2; Dkt. 26 at ¶ 7.) In particular, 3M claims,

> The Court's Scheduling Order is clear and specific in its requirement that Donnelly had to disclose its proposed claim constructions and supporting evidence on or before December 21, 2011. Donnelly, however, did not submit any proposed claim constructions, nor did it identify any supporting evidence in its December 21 disclosure. . . .

9

> Instead, Donnelly contended that no claims, including the 13 disputed terms identified by 3M, needed to be construed, offered no proposed interpretations, and did not even have a column in its chart for citations to any pertinent evidence.

(Def.'s Mot. for Contempt at 6.)

In its Response to 3M's Motion for Contempt and at oral argument, Magna maintains that "plain and ordinary" meaning is a proper proposed interpretation because a patentee is entitled to the full scope of what one having ordinary skill in the art would understand a claim term to mean. In support of this claim, Magna relies on the Federal Circuit's recent decision in *Thorner v. Sony Computer Ent. Am.*, which provides:

> The words of a claim are generally given their ordinary and customary meaning as understood by a person of ordinary skill in the art when read in the context of the specification and prosecution history. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (en banc). There are only two exceptions to this general rule: 1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of a claim term either in the specification or during prosecution.

— F.3d —, 2012 WL 280657, at *2 (Fed. Cir. Feb. 1, 2012). Magna further asserts that it provided no particular "plain and ordinary" construction because to choose a definition would narrow the full scope of what one having ordinary skill in the art would understand the claim term to mean. Magna also takes the position that no evidence was (or is) necessary to demonstrate that a claim term should be accorded its plain and ordinary meaning and that any evidence it cited in its Amended Proposed Interpretations and in its opening claim-construction brief merely rebuts 3M's allegedly narrow proposed interpretations.

The Court agrees with Magna that "[w]hile claim construction is a matter for the Court, it need not provide a new definition or rewrite a term, particularly when the Court finds the term's

10

plain and ordinary meaning is sufficient." *National Oilwell Varco, L.P. v. Auto-Dril, Inc.,* No. 5:09cv85, 2011 WL 3648532, at *4 (E.D. Tex. Aug. 16, 2011). Upon summarizing the Federal Circuit's recent case-law regarding claim construction, the court in *National Oilwell* concluded:

> when two parties offer different constructions, *or if one side argues for ordinary meaning, . . . the Court must first determine whether it has a duty to resolve the meaning and the scope*. While it is a district court's duty is to construe the claims, part of this duty is to determine the extent [to] which . . . construction is even necessary. With regard to meaning, where additional language may be unduly limiting, confusing, or redundant, it is in a court's power to determine that no construction is necessary. A court may decline to adopt constructions that violate claim construction doctrine, such as improperly importing limitations, and may still construe terms to have their ordinary meaning.

*Id.* at *6 (emphasis added) (finding no construction necessary of the terms "results," "to control," and "controlling"); *see also 3M Innovative Properties Co. v. Tredegar Corp.*, No. 09-3335, 2011 WL 6004023, at *27 (D. Minn. Nov. 30, 2011) (finding that the term "stretched" was "clear and requires no further construction" where 3M asserted that "the claim language is clear and need not be construed, but that if the Court decides to construe the term, it should construe it as 'to extend in length'" but defendant asserted that the term should be construed as "increasing the dimension of a material in at least one direction in response to an applied tension."); *Caluori v. One World Techs., Inc.*, No. CV 07-2035, 2010 WL 4794234, at *5-6 (C.D. Cal. Nov. 12, 2010) (giving "partially hollow cylinder" its plain and ordinary meaning of "partially hollow cylinder" where plaintiff asserted that the term required no construction and defendants asserted that term should be construed to mean a "cylinder having walls that define a cavity"; noting that "[n]othing in the specification requires a construction that adds the limitations of 'walls' and a 'cavity.'"); *Bd. of Trustees of the Leland Stanford Junior Univ. v. Roche Molecular Sys.*, No. 05-04158, 2007 WL

11

5787309, at *6-7 (N.D. Cal. Nov. 27, 2007) (finding that the terns "therapeutically effective" and "therapeutically ineffective" were "commonplace" and "do not need to be construed because they are neither unfamiliar to the jury, confusing to the jury, nor affected by the specification or prosecution history.").

Given the foregoing authorities, it appears that it is not uncommon for a party to urge a court to forgo construing a claim term and for a court to accord a term its "plain and ordinary" meaning.[3] And that is what Magna provided in its December 21, 2011 Proposed Interpretations and the position that it maintained in its opening claim-construction brief. In fact, Magna has emphasized that the proposed definitions appearing in its claim-construction brief are merely examples used to rebut 3M's constructions. (Pl.'s Resp. to Mot. for Contempt at 6 ("Magna Has Not Changed Its Proposed Constructions – Magna's Examples Are Just That – Examples").) Accordingly, the Court cannot say that Magna's assertion in its initial Proposed Interpretations that none of the 13 terms required construction and that all 13 terms were to be accorded their "plain and ordinary" meaning – without also specifying the "plain and ordinary meanings" – clearly violated the Scheduling Order's requirement that each party provide a chart "that lists for each disputed claim term the party's proposed interpretation of the disputed claim term." 3M has not carried its heavy burden for establishing contempt in this regard.

Of course, this is not to suggest that Magna is correct that the Court should forgo construing any of the 13 disputed claim terms. *See O2 Micro Intern. Ltd. v. Beyond Innovation Technology Co., Ltd.*, 521 F.3d 1351, 1361 (Fed. Cir. 2008) ("A determination that a claim term 'needs no

---

[3]The case law is less clear on whether a party urging such a construction must also provide the court with a proposed "plain and ordinary meaning" to assist the court in its claim construction functions.

construction' or has the 'plain and ordinary meaning' may be inadequate when a term has more than one 'ordinary' meaning or when reliance on a term's 'ordinary' meaning does not resolve the parties' dispute."); *Roche Molecular Sys.*, 2007 WL 5787309, at *6-7 (explaining that terms did "not need to be construed because they are neither unfamiliar to the jury, confusing to the jury, nor affected by the specification or prosecution history."). The Court also adds that while Magna's proposed interpretation of "plain and ordinary" – without further explanation – may have been technically compliant under the Scheduling Order, as a practical matter, this Court believes that in many cases it would be helpful for a Court to have in hand examples of "plain and ordinary" meaning to make the determination of whether a claim term requires construction. *See Phillips*, 415 F.3d at 1313 ("Because the meaning of a claim term as understood by persons of skill in the art is often not immediately apparent, and because patentees frequently use terms idiosyncratically, the court looks to those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean. Those sources include the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art." (internal citations and quotation marks omitted)). In fact, 3M indicated at oral argument that, at least in the vast majority of cases, when a party argues that a claim term need not be construed, it accompanies that argument with a definition in the alternative.[4]

---

[4] For reasons already provided, the Court finds *Constant Compliance, Inc. v. Emerson Process Management Power & Water Solutions, Inc.*, 598 F. Supp. 2d 842 (N.D. Ill. 2009), a case relied upon by 3M, distinguishable. In *Constant Compliance*, the Court ordered both parties "to simultaneously submit their own proposed claim term constructions" by a certain date. *Id.* at 843. However, when the date arrived, the defendant contended that claim terms "were indefinite and invalid but did not propose any constructions of these terms." *Id.* at 844. But, about two weeks later, the defendant provided proposed constructions. *Id.* The court held that the defendant had

13

Remaining is 3M's assertion that Magna did not, as the Scheduling Order requires, include with its proposed interpretations "citations to the intrinsic and extrinsic evidence that supports its interpretation." Magna explains that the evidence it cites in its Amended Proposed Interpretations was solely for the purpose of rebutting 3M's claim constructions:

> In response to 3M's overly narrow proposals that are contradicted by the intrinsic evidence, Magna needed to provide rebuttal evidence of how one of ordinary skill might define the terms by way of example only. Such examples were necessary in order for the Court to put into perspective the unduly limited and narrow claim interpretations being proposed by 3M and to demonstrate why the Court should not adopt 3M's proposals. Accordingly, Magna provided citations to dictionaries that may have been used by one of ordinary skill. . . .
>
> As a result of 3M proposing overly narrow constructions, Magna was compelled to demonstrate to the Court that one of ordinary skill in the art uses these terms without the additional limitations that 3M attempts to add via claim construction. The most compelling evidence is 3M's own use of these terms prior to this litigation. Accordingly, Magna provided rebuttal evidence in the form of citations to 3M's own literature and documents that contradicts 3M's proposed constructions.

(Pl.'s Resp. to Mot. for Contempt at 7-8.)

But it is not apparent that all of the evidence cited by Magna was solely to rebut 3M's proposed interpretations. For example, regarding the term "wherein said adhesive is a modified epoxy," Magna's Amended Proposed Interpretations provide that, if the Court construes the claim,

---

waived its right to do so because it had not provided any proposed constructions by the deadline set by the court. *Id.* at 845 ("It should come as no surprise . . . that a defendant's failure to respond to a plaintiffs proposed claim constructions can constitute a waiver. . . . [Defendant] waived its right to propose constructions of the Disputed Terms by failing to propose constructions at the proper time."). As discussed, in this case, the Court cannot say that Magna did not propose any construction of the disputed terms in a manner similar to the defendant in *Constant Compliance*. Magna did, and still does, assert that the disputed terms should not be construed and its proposed interpretation is that each term be accorded its plain and ordinary meaning.

14

the plain and ordinary meaning is "wherein said adhesive is produced by modification of an epoxy." (Magna's Am. Proposed Interpretations at 4.) There appears to be – to the undersigned at least – no difference between the language of the claim and Magna's example of the claim term's plain and ordinary meaning. Yet, in its Amended Proposed Interpretations Magna cites intrinsic evidence: "236 patent & prosecution history[;] '236 patent, col. 3, l. 30-31, col. 3, l. 40-46; col. 3, l. 61-67." If Magna's example of the claim term's plain and ordinary meaning is in fact identical to the claim language, this intrinsic evidence arguably should have been included in Magna's December 21, 2011 Proposed Interpretations.

And even if the Court were to grant Magna that all of its evidence was either not in its possession on December 21, 2011 or is purely to rebut 3M's proposed constructions – i.e., that in relying on plain and ordinary meaning on December 21, 2011 Magna had no reason to cite any evidence – the Court finds it troubling that Magna did not provide its amendments to 3M well in advance of filing its opening claim-construction brief. As 3M asserts, Magna's brief was not filed until February 9, 2012 – seven weeks after 3M provided Magna with its proposed constructions.

In its Response to 3M's Motion for Contempt, Magna cites *Delphi Automotive Sys., LLC v. Vehicle Occupant Sensing Sys.*, No. 10-10886, 2012 WL 126420 (E.D. Mich. Jan. 17, 2012). But this case actually favors 3M on the limited issue of Magna's failure to produce its amendments prior to filing its opening claim-construction brief. There, similar to here, the scheduling order required the parties to exchange "proposed constructions for terms to be construed and support for their contentions" in advance of claim construction briefing. *Id.* at *1. But when the plaintiffs subsequently filed their claim-construction response brief, they relied on an expert declaration not previously cited in its proposed constructions. *Id.* The *Delphi* court reasoned, in part:

15

> [T]o the extent that [the expert's] declaration rebuts the constructions proposed by [Defendant] in its initial disclosure, the Plaintiffs should have disclosed an intent to rely on expert testimony to [Defendant] in a timely fashion. . . . Granting [Plaintiffs'] argument that they were not aware of the need to rely on expert testimony until they received [Defendant's] initial proposed constructions, they have still not offered any justification for their failure to disclose this testimony until after [Defendant] had already filed its opening construction brief and a mere seven days before its reply brief was due.
>
> [Defendant] would plainly be prejudiced at the claim construction hearing if the Plaintiffs were permitted to rely on this evidence without giving their adversary a reasonable opportunity to depose [the expert] and rebut his opinions.

*Delphi*, 2012 WL 126420, at *3-4. The Court agrees with this reasoning from *Delphi*: Magna should not have waited until the very day it filed its opening claim-construction brief to provide 3M with its Amended Proposed Interpretations which include citations to both intrinsic and extrinsic evidence.

In sum then, Magna appears to have at least technically complied with the Scheduling Order's requirement to provide proposed interpretations by December 21, 2011, and has shown that at least some of the evidence it has cited in its Amended Proposed Interpretations and in its opening claim-construction brief was either not in its possession by December 21 or offered solely to rebut 3M's constructions. Accordingly, the Court does not find that Magna should be held in contempt for violating the Scheduling Order, or that the harsh remedy of striking portions of Magna's opening claim-construction brief is warranted. *See Delphi*, 2012 WL 126420, at *4 ("[T]he Court recognizes that '[e]xclusion of "critical evidence" in a patent case is an "extreme sanction, not normally to be imposed absent a showing of willful deception or flagrant disregard of a court order by the proponent of the evidence."'"). But the Court remains troubled that Magna did not provide its Amended Proposed Interpretations to 3M before February 9, 2012. In view of the arguable

16

prejudice to 3M, the Court will exercise its broad discretion under Fed. R. Civ. P. 16(f) and grant 3M scheduling relief as set forth in a separate order issued contemporaneously with this Report and Recommendation.

### III. CONCLUSION AND RECOMMENDATION

For the forgoing reasons, this Court RECOMMENDS that 3M's Motion for Contempt (Dkt. 61) be GRANTED IN PART insofar as 3M is entitled to additional time to respond to Magna's opening claim-construction brief but otherwise be DENIED.

### IV. FILING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan v. Comm'r Soc. Sec.*, 474 F.3d 830 (6th Cir. 2006) (internal quotation marks omitted); *Frontier*, 454 F.3d at 596-97. Objections are to be filed through the Case Management/Electronic Case Filing (CM/ECF) system or, if an appropriate exception applies, through the Clerk's Office. *See* E.D. Mich. LR 5.1. A copy of any objections is to be served upon this magistrate judge but this does not constitute filing. *See* E.D. Mich. LR 72.1(d)(2). Once an objection is filed, a response is due within fourteen (14) days of service, and a reply brief may be filed within seven (7) days of service of the response. E.D. Mich. LR 72.1(d)(3), (4).

S/Laurie J. Michelson

Laurie J. Michelson

United States Magistrate Judge

Dated: February 24, 2012

**PROOF OF SERVICE**

The undersigned certifies that the foregoing document was served upon the parties and/or counsel of record via the Court's ECF System and/or U. S. Mail on February 24, 2012.

s/Jane Johnson
Case Manager to
Magistrate Judge Laurie J. Michelson